IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRITTANY EASTON,

     Plaintiff,

v.

ASPLUNDH TREE EXPERTS, CO.,

     Defendant.

Case No. C16-1694RSM

ORDER GRANTING PLAINTIFF'S
MOTION TO EXCLUDE EXPERT
WITNESS

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff's Motion to Exclude Testimony of Defendant's Expert Witness Russ Perisho.  Dkt. #21.  Plaintiff argues that Mr. Perisho's testimony should be excluded because he is not qualified to be a human resources expert, his testimony is unreliable and irrelevant, and his proposed testimony invades the province of the jury.  *Id.*  Defendant opposes the motion, arguing that Mr. Perisho is more than qualified to provide his propounded opinions and that he will assist the trier of fact in understanding the issues raised in this lawsuit.  Dkt. #25.[1]  For the reasons set forth below, the Court disagrees, and GRANTS Plaintiff's Motion to Exclude.[2]

---

[1]  Defendant has filed an impermissible overlength brief in violation of the Court's Local Civil Rules, which limit response briefs in these types of motions to 12 pages.  LCR 7(e)(4).  Because Defendant failed to seek leave of Court prior to filing its brief, the Court declines to consider all pages of the brief in excess of 12 pages.  Further, the Court notes that this is not the first time Defendant has failed to comply with the Court's Local Rules in this matter.  *See*

ORDER– 1

## II. BACKGROUND

This is an employment action in which Plaintiff raises claims for violations of Washington's Law Against Discrimination ("WLAD") based on sex (female), intentional infliction of emotional distress, respondeat superior, negligent hiring and supervision and failure to train, and hostile work environment. Dkt. #1-1. Plaintiff alleges that she had been hired by Defendant as a flagger and was subsequently sexually harassed by her male supervisor.[3] Dkt. #1-1 at ¶ ¶ 1-10. Plaintiff further alleges that after she reported the harassing behavior to another foreman and a supervisor, she suffered retaliation, Defendant failed to take appropriate corrective action, and she was eventually laid off. *Id.* at ¶ ¶ 12-32. Defendant denies those allegations. Dkt. #9.

On August 9, 2017, Defendant produced the report of its proposed human resources expert, Russ Perisho. Dkt. #21-1, Ex. 2. Mr. Perisho describes himself as "an attorney, hearing officer, and workplace investigator." *Id.*at 1. Mr. Perisho summarized his opinions as follows:

> 1. The Company implemented and publicized appropriate anti-discrimination and antiharassment policies, which were regularly provided to their employees. Based on a review of the records, Asplundh took reasonable steps to publicize the policy with its employees. Asplundh's anti-discrimination anti-harassment policy, if implemented as written, should be considered to be an effective

Dkts. #16 and #28. Any continued failure to adhere to the Court's Local Rules may result in sanctions.

[2] The Court finds that it has "an adequate record before it to make its ruling" without holding a *Daubert* evidentiary hearing. *In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1138-39 (9th Cir. 2002).

[3] While Defendant generally denies Plaintiff's allegations as characterized in her Complaint, Mr. Perisho's report notes that Defendant disciplined Plaintiff's supervisor for violating its "No Harassment Policy." Dkts. #9 and #21-1, Ex. 2 at 8.

employer program to prevent and address unlawful sex harassment consistent with HR best practices, Washington legal requirements and common-sense considerations.

2. The Company responded reasonably promptly when it learned that harassing and offensive behavior may have occurred which could be in violation of the Company's policies. I conclude based on the available facts that the Company conducted a reasonably prompt investigation, consistent with HR best practices, Washington legal requirements and common-sense considerations.

3. The Company conducted an appropriate investigation to gather and determine the relevant facts. Six employees, including the complainant (Easton) and the alleged harasser (Mel), were interviewed. The records do not suggest that the internal investigator was biased. His position and the record of his investigation suggest that he had the necessary skills to conduct an investigation. The interviews were conducted so that the relevant facts were elicited and recorded with sufficient detail. Thorough and accurate notes were kept. The investigation was promptly initiated and concluded. Based on these facts and other factors, I conclude that the Company conducted a reasonably thorough investigation, consistent with HR best practices, Washington legal requirements and common-sense considerations.

4. The Company took actions that were reasonably calculated to end harassing and offensive behavior. Following the investigation, the Company disciplined Mel for "Violation of No Harassment Policy." Mel was suspended without pay for five days – one work week. He was told that the next step in discipline would be termination. He was provided with copies of the Company's policies prohibiting discrimination and harassment, which he signed and agreed to follow. Here, given the totality of the circumstances, a one work week suspension is reasonably proportionate to the offense, particularly in light of this being a first offense of the kind in Mel's thirty years working at Asplundh.

Mel was to undergo retraining on the Company's harassment policy. The training requirement was particularly appropriate here. Good training can be valuable in gaining compliance with employer policies prohibiting harassment. A primary disciplinary goal under best HR practices and the law is not punishment; rather, the employer must initiate steps reasonably calculated to provide a harassment-free workplace for its employees and prevent future violations of the employer's policy. That occurred here.

ORDER– 3

Dkt. #21-1, Ex. 2 at 2-3. Plaintiff objects to Mr. Perisho offering those opinions at trial, and now moves to exclude him.

### III. DISCUSSION

**A. Legal Standards**

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, the trial court acts as a gatekeeper and ensures that the proffered scientific testimony meets certain standards of both relevance and reliability before it is admitted. *Daubert v. Merrell Dow Pharm., Inc. ("Daubert I")*, 509 U.S. 579, 590, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). The party proffering expert testimony has the burden of showing the admissibility of the testimony by a preponderance of the evidence. *Daubert I*, 509 U.S. at 592 n.10. "[J]udges are entitled to broad discretion when discharging their gatekeeping function" related to the admission of expert testimony. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150-53, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). The Court considers four factors to determine if expert testimony will assist the trier of fact: "(i) whether the expert is qualified; (ii) whether the subject matter of the testimony is proper for the jury's consideration; (iii)

ORDER– 4

whether the testimony conforms to a generally accepted explanatory theory; and (iv) whether the probative value of the testimony outweighs its prejudicial effect." *Scott v. Ross*, 140 F.3d 1275, 1285-86 (9th Cir. 1998).

As an initial matter, this Court must determine whether the proffered witness is qualified as an expert by "knowledge, skill, experience, training or education." Fed. R. Evid. 702. Because the Rule "contemplates a *broad conception* of expert qualifications," only a "*minimal foundation* of knowledge, skill, and experience" is required. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004) (emphasis in original) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). A "lack of particularized expertise goes to the weight of [the] testimony, not its admissibility." *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993) (citing *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984)); *Daubert v. Merrell Dow Pharm., Inc. ("Daubert II")*, 43 F.3d 1311, 1315 (9th Cir. 1995).

The trial court must also ensure that the proffered expert testimony is reliable. Generally, to satisfy Rule 702's reliability requirement, "the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." *Daubert II*, 43 F.3d at 1316. Toward this end, the Supreme Court in *Daubert I* set forth the following factors for the trial court to consider when assessing the reliability of proffered expert testimony: (1) whether the expert's method, theory, or technique is generally accepted within the relevant scientific community; (2) whether the method, theory, or technique can be (and has been) tested; (3) whether the method, theory, or technique has been subjected to peer review and publication; and (4) the known or potential rate of error of the method, theory, or technique. *Daubert I*,

509 U.S. at 593-94. An expert opinion is reliable if it is based on proper methods and procedures rather than "subjective belief or unsupported speculation." *Id.* at 590. The test for reliability "'is not the correctness of the expert's conclusions but the soundness of his methodology.'" *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (quoting *Daubert II*, 43 F.3d at 1318).

Alternative or opposing opinions or tests do not "preclude the admission of the expert's testimony – they go to the *weight*, not the admissibility." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998). Furthermore, "'[d]isputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.'" *Id.* (quoting *McCulloch v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).

Finally, the Court must ensure that the proffered expert testimony is relevant. As articulated in Rule 702, expert testimony is relevant if it assists the trier of fact in understanding evidence or in determining a fact in issue. *Daubert I*, 509 U.S. at 591. Thus, the party proffering such evidence must demonstrate a valid scientific connection, or "fit," between the evidence and an issue in the case. *Id.* Expert testimony is inadmissible if it concerns factual issues within the knowledge and experience of ordinary lay people because it would not assist the trier of fact in analyzing the evidence. In the Ninth Circuit, "[t]he general test regarding the admissibility of expert testimony is whether the jury can receive 'appreciable help' from such testimony." *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir. 1986). Because unreliable and unfairly prejudicial expert witness testimony is not helpful to the trier of fact, the trial court should exclude such evidence. *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001). Likewise, expert testimony that

merely tells the jury what result to reach is inadmissible. Fed. R. Evid. 704, Advisory Committee Note (1972); *see, e.g.*, *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.").

### B. Plaintiff's Motion to Exclude the Testimony of Mr. Perisho

Plaintiff seeks to exclude Mr. Perisho's testimony on the bases that he has no foundation for his opinions (he is not qualified); his testimony is not reliable; and his testimony is not relevant. Dkt. #21 at 3-9. The Court agrees that Mr. Perisho's testimony is not reliable and that his testimony is not relevant.[4] Specifically, having reviewed the expert report propounded by Mr. Perisho, the Court excludes him as an expert because the methodology he employed is unreliable and he seeks to testify to matters that are within the understanding of the jury or that are legal conclusions not properly the subject of expert testimony.

As described above, Mr. Perisho opines that Defendant's actions in this matter were "consistent with HR best practices, Washington legal requirements and common-sense considerations." Dkt. #21-1, Ex. 2. Significantly, Mr. Perisho does not identify the source of his "HR best practices." In addition, although Mr. Perisho states that he relied on a pamphlet promulgated by the Association of Workplace Investigators, literature from the EEOC, and a book on arbitration, his report does not include any analysis regarding how he applied the

---

[4]  The Court assumes for purposes of this motion (without deciding) that Mr. Perisho is qualified as an expert; although the Court notes that Mr. Perisho fails to include with his expert report a list of all publications authored in the previous 10 years, a list of other cases in which, during the previous 4 years, he testified as an expert at trial or by deposition, and a statement of the compensation to be paid for the study and testimony in the case, as required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. Proc. 26(a)(2)(b) and Dkts. #21-1, Ex. 2 and #26, Exs. 4-6.

proffered standards of care to this case, or how those publications assisted.  *See* Dkt. #21-1, Ex. 2.  Instead, noting that he was limited by the fact that no depositions had been taken in this matter, Mr. Perisho merely concludes that Defendant's policies and actions are reasonable, without explanation or analysis as to how those policies and actions are consistent with any HR "best practices" and whether, and to what extent, he considered Plaintiff's conflicting allegations regarding the same issues.[5]  *Id.*

This situation is similar to that in *Arjangrad v. JPMorgan Chase Bank, N.A.*, 2012 U.S. Dist. LEXIS 71745 (D. Or. May 23, 2012).  Like Mr. Perisho in this case, the expert was an attorney with decades of experience in employment law, primarily representing and advising large employers on employment law issues.  *Id*. at *2.  He had trained employers and human resources managers regarding investigation of discrimination complaints and other employment law issues, and written articles on employment law compliance in national and local publications.  *Id*.  However, he possessed no formal education, training, or work experience pertaining to human resources other than what he has gained as an employment lawyer.  2012 U.D. Dist. LEXIS 71745 at *2.  While the court concluded that the expert was qualified to give the stated opinions, the court also concluded that the testimony was neither reliable nor relevant.  It was not reliable because the expert failed to explain "how his experience performing discrimination investigations or his expertise advising employers and HR professionals led him to understand and define generally accepted standards of HR

---

[5]  While the Court cannot conclude that consideration of Plaintiff's allegations would or should change Mr. Perisho's opinions, his failure to even acknowledge them results in an unreliable methodology in reaching his opinions in this case.  *See In re Rezulin,* 309 F. Supp. 2d 531, 551 (S.D. N.Y. 2004) (holding expert testimony inadmissible where the expert "does no more than counsel for [the party] will do in argument, *i.e.*, propound a particular interpretation of [the party]'s conduct") (quotation omitted)).

investigation practices." 2012 U.S. Dist. LEXIS 71745 at *15. Rather, the testimony would ask the trier of fact to take the expert's word on the veracity of his conclusions. The court concluded the testimony was not relevant for several reasons, including that unreliable testimony would not meet the low standard that "an expert's testimony must 'logically advance[] a material aspect of the party's case.'" 2012 U.S. Dist. LEXIS 71745 at *19 (quoting *Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1315 (9th Cir. 1995).

Having reviewed Mr. Perisho's report in this case, this Court finds that Mr. Perisho's proposed testimony suffers from the same deficiencies. As the court explained in *Arjangrad*, experts such as Mr. Perisho, who rely "solely or primarily on experience," must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Arjangrad*, 2012 U.S. Dist. LEXIS 71745 at *14 (quoting Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'")). As noted above, Mr. Perisho never explains how his experience led him to understand and define "HR best practices." Instead, his report merely asserts that certain actions taken by Defendant are "consistent with HR best practices" and were therefore reasonable. *See* Dkt. #21-2, Ex. 2.

Additionally, Mr. Perisho's review of the records and his resulting credibility determinations are within the common understanding of the jury and, therefore, Mr. Perisho's opinions do not appear to offer any expertise to assist the jury in this case. *See Duncan*, 42 F.3d at 101. Expert testimony is not helpful to a jury, and thus not relevant, when it addresses an issue that is within "the common knowledge of the average layman." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150

ORDER– 9

(9th Cir. 2001); *see also United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002).  To the extent that Mr. Perisho bases his testimony about HR practice standards and Defendant's investigation on nothing more than his common sense, a jury can accomplish the same analysis without an expert.  Likewise, Mr. Perisho's opinions on the impartiality of the investigator is unhelpful because "opinions that are nothing more than vouchers for or attacks on credibility do not assist the trier of fact," since it is the province of the jury to determine credibility. *Hernandez v. City of Vancouver*, No. C04-5539 FDB, 2009 U.S. Dist. LEXIS 13020, 2009 WL 279038, at *2 (W.D. Wash. Feb. 5, 2009) (citing *United States v. Barnard*, 490 F.2d 907, 912-13 (9th Cir.1973) and *United States v. Awkard*, 597 F.2d 667, 671 (9th Cir.1979)).

Finally, Mr. Perisho couches his opinions with qualifiers such as "if implemented as written," "given the timing as alleged in the Complaint, this would be consistent with," "the records do not suggest," "it appears that," and "it can be assumed that."  Dkt. #21-1, Ex. 2. He then concludes that the company's policies should be considered adequate and all of the resulting actions taken by Defendant were "reasonable."  Dkt. #21-1, Ex. 2.  Those conclusion are really legal conclusions regarding the ultimate issue on Plaintiff's respondeat superior claim.

Defendant is correct that some courts (outside this District) have allowed attorneys to testify as human resources experts.  For example, in *Wood v. Montana Dep't of Revenue*, 2011 U.S. Dist. LEXIS 105478, 2011 WL 4348301, at *2-3 (D. Mont. Sept. 16, 2011), the court allowed a human resources expert to testify as to whether the defendant deviated from its own policies and procedures.  However, the court excluded portions of the expert's testimony that concerned matters within the common knowledge of the jury and that

contained legal conclusions. Similarly, in *Hernandez v. City of Vancouver*, 2009 U.S. Dist. LEXIS 13020, 2009 WL 279038, at \*4 (W.D. Wash. Feb. 5, 2009), the court excluded portions of a human resources expert's testimony because her "report consists of little more than a recitation of Plaintiff's evidence, combined with her conclusion that the evidence demonstrates that Plaintiff was discriminated against." Moreover, although experts may use legal terms in expressing their opinions, expert testimony that consists of legal conclusions is unhelpful and inadmissible. *See United States v. Boulware*, 558 F.3d 971, 975 (9th Cir. 2009); *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058, 1060 (9th Cir. 2008). An expert may offer factual conclusions that embrace an ultimate factual issue to be decided, but may not state ultimate legal conclusions, such as whether retaliation occurred. *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 179 (S.D.N.Y. 2008); *Hernandez*, 2009 U.S. Dist. LEXIS 13020, 2009 WL 279038, at \*5.

Accordingly, for all of the reasons discussed above, the Court will grant Plaintiff's Motion to Exclude Mr. Perisho's testimony.

## IV. CONCLUSION

Having reviewed Plaintiff's motion, the opposition thereto, and reply in support thereof, along with the Declarations, exhibits and the remainder of the record, the Court hereby finds and ORDERS that Plaintiff's Motion to Exclude (Dkt. #21) is GRANTED, and Mr. Perisho will not be permitted to testify as an expert witnesses for Defendant in this matter.

DATED this 12 day of September, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER– 11